J-S30015-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT ROBERT SCHAEFFER | : | |
| | : | |
| Appellant | : | No. 64 MDA 2021 |

Appeal from the PCRA Order Entered December 21, 2020
In the Court of Common Pleas of Northumberland County Criminal
Division at No(s): CR-89-477

BEFORE: BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.: **FILED OCTOBER 25, 2021**

Appellant, Scott Robert Schaeffer, appeals from the post-conviction court's December 21, 2020 order denying his petition for DNA testing pursuant to 42 Pa.C.S. § 9543.1(d) of the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we affirm.

The Commonwealth provided a concise summation of the lengthy procedural and factual history of this case, which we reproduce as follows:

> In 1989, [Appellant] and [his] co-conspirators, … includ[ing] William Hendricks and Thomas Yoder, were charged with kidnapping Rickey Wolfe and killing him because Wolfe owed a drug debt. The Commonwealth's theory of the case was that Mark Byers owed Robert Hummel, a drug dealer, money for drugs that Hummel gave him on credit. Byers informed Hummel that he sold drugs to Ricky Wolfe on credit and Wolfe owed him money. Wolfe was kidnapped and driven to a boat launch area in

---

[*] Retired Senior Judge assigned to the Superior Court.

Northumberland County. At the boat launch area, Wolfe was killed.[1]

The Commonwealth charged [Appellant] with criminal homicide, kidnapping, and other crimes related to Wolfe's murder. The evidence at trial included a marijuana pipe found at the boat launch area, hair evidence, and blood evidence. In 1990, [Appellant] went to trial. At trial, DNA evidence and DNA testing was discussed. Specifically, Paul Daube, who worked for the State Police as a Forensic Science Supervisor in charge of the Serology Unit of the Harrisburg Laboratory, testified that DNA testing could help identify the saliva found on the marijuana pipe. *See* N.T. Trial[, 7/23/90-8/1/90,] at 316, 331. Supervisor Daube also explained that the hair comparison analysis, which he performed for this case and presented at trial, was not as exacting as DNA testing. *Id*. at 321. At trial, Corporal Donald Seidel of the Pennsylvania State Police testified that blood samples were subjected to DNA testing, but "we were able to get nothing on the DNA results." *Id*. at 455.

At trial, Hummel provided testimony incriminating [Appellant]. [Appellant] was convicted of first-degree murder, kidnapping, aggravated assault, unlawful restraint, conspiracy to commit aggravated assault, and conspiracy to commit kidnapping. The trial court sentenced [Appellant] to life in prison without the possibility of parole.

[Appellant] later filed a … []PCRA[] petition. In 2002, the PCRA court held a hearing on [Appellant's] PCRA petition. Hummel recanted his trial testimony that had incriminated [Appellant]. Hummel testified[,] in relevant part: "I was not involved in the Ricky Wolfe homicide. I do not know if [Appellant] was involved in the Rickey Wolfe homicide." *See* [N.T. PCRA Hearing, 4/2/02, at 23]. Although Hummel recanted his trial testimony, he did not absolve [Appellant]. Hummel's testimony only provided that he did not know if [Appellant] was involved in [Wolfe's] murder.

---

[1] The evidence at trial indicated that Appellant, Hendricks, and Yoder were "enforcers" for Hummel, and that on the day of the murder, Appellant participated in handcuffing Wolfe and beating him until he "lay motionless on the ground, presumably dead." *Commonwealth v. Schaeffer*, No. 2394 Phila. 1992, unpublished memorandum at 3-4 (Pa. Super. filed May 17, 1995).

While his PCRA petition was still pending in 2004, [Appellant] chose to enter an agreement with the Commonwealth where his PCRA petition (based on Hummel's recantation testimony) would be granted, he would enter a no contest plea to third-degree murder and conspiracy to commit kidnapping, and he would be sentenced to 10 years to 20 years of incarceration, followed by 10 years of probation. The agreement called for the granting of [Appellant's] PCRA petition and the no contest plea/sentencing to occur on the same day.

At [Appellant's] no contest plea, the trial court extensively informed [Appellant] of his right to a jury trial, the presumption that he was innocent, his right not to testify, and that "[b]y entering this plea, you're giving up all trial rights, all pretrial rights, and the only thing remaining would be for the judge to sentence you in accordance with the plea agreement. Do you understand that?" [N.T. Plea, 7/27/04, at 8-9]. [Appellant], who was sworn in as a witness, [*id.* at 5], stated that he understood. [*Id.* at 8.] [Appellant] also stated that he fully discussed the charges with his counsel and the applicable procedure. [*Id.*] [Appellant] confirmed that he entered his no contest plea voluntarily and of his own free choice. [*Id.*] [Appellant] and his counsel from 2004 also completed an extensive written colloquy. [*Id.* at 7]. In that colloquy form, [Appellant] acknowledged that he was waiving the filing of any pretrial motions. [*See* Plea Colloquy, 7/27/04, at 3 ¶ 28e]. [Appellant] signed the colloquy form. [*Id.* at 4]. [Appellant] stated in the form that he was entering his plea "to resolve [the] case." [*Id.* at 2 ¶ 15].

[Appellant] did not request DNA testing in 2004. [Appellant] entered the … no contest plea agreement in 2004 when DNA testing was known and available.

Over 14 years later, in late December of 2018, [Appellant] sought DNA testing for the first time. [As discussed, *infra*, Appellant] had completed his sentence before he first sought DNA testing in late 2018. [Appellant] also filed another PCRA petition in December of 2018, seeking relief from his judgment of sentence in that PCRA petition.

In response to an Order from the PCRA court, [Appellant] filed an amended petition for DNA testing in July of 2019. [Appellant] sought DNA testing of the marijuana pipe, white adhesive tape (and associated hair evidence), blood samples from the murder scene, brown human head hair, contents of the bag used to secure

Wolfe's hands, nail scrapings and debris with hairs from behind Wolfe's left hand, broken glass from Wolfe's car, sweepings from Wolfe's car, Yoder's forearm hairs, head hairs from Byers, head hair from Hummel, Busch beer cans, and nunchucks (the murder weapon). *See* PCRA Court Opinion and Order [(PCOO)], 12/21/20, at 2-3….

The Commonwealth opposed [Appellant's] petition for DNA testing for multiple reasons. The Commonwealth argued that [Appellant's] petition for DNA testing, filed almost 30 years after DNA was first mentioned at his trial, was untimely. The Commonwealth also asserted that [Appellant] had not established that there was a reasonable probability that DNA testing would lead to evidence providing for [Appellant's] actual innocence. That is particularly so because if DNA evidence appears to place [Appellant's] co-conspirators/accomplices at the murder scene that would corroborate the Commonwealth's theory of the case, not establish [Appellant's] innocence. The Commonwealth also argued that [Appellant] could not establish his innocence because his no contest plea did not admit guilt.

The PCRA court held a hearing concerning [Appellant's] petition for DNA testing on November 6, 2019. … [There, Appellant's] counsel stated "the fact that DNA testing was available in 1990. We agree. The record is replete that DNA testing took place before my client's conviction in 1990." [N.T. PCRA Hearing, 11/6/19, at 26]. [Appellant] argued that he was not asking for a 1990 DNA test, a 1995 DNA test, or a 2004 DNA test. [*Id.* at 26-27]. [Appellant] asserted that he was asking for a 2019 DNA test. [*Id.* at 27]. [Thus, Appellant] conceded that DNA testing was available as early as 1990, and necessarily in 2004, and that he did not ask for DNA testing until late 2018.

\*\*\*

On December 21, 2020, the PCRA court denied [Appellant's] petition for DNA testing. The PCRA court concluded that [Appellant's] petition for DNA testing was untimely. *See* [PCOO] at 4-5. The PCRA court also concluded that [Appellant] failed to prove that there was a reasonable probability that DNA testing would lead to evidence establishing his actual innocence. *Id.* at 5-6. An order granting or denying DNA testing is a final order.

*See* 42 Pa.C.S.[] § 9543.1(d)(3).[2] [Appellant] filed a timely notice of appeal.

The PCRA court ordered [Appellant] to file a Pa.R.A.P. 1925(b) Statement. In his [Rule] 1925(b) Statement, [Appellant], in essence, asserted that the PCRA court erred in denying his petition for DNA testing by finding that the petition was untimely and by finding that there is not a reasonable probability of proving his actual innocence.

Commonwealth's Brief at 3-8 (footnotes and some citations omitted).

Now, on appeal, Appellant raises the following claims for our review:

1. Did the [PCRA c]ourt commit abuses of discretion and/or errors of law in its decision of December 15, 2020, entered of record on December 21, 2020, as follows:

A. In finding that Appellant's instant [p]etition is untimely, and that prejudice has attached against Appellant's request for DNA [testing]; as said [p]etition was timely filed under 42 Pa.C.S. § 9543.1(d), as set forth under 42 Pa.C.S. §

_____

[2] The Commonwealth observes that "[i]t is not exactly clear what the four corners of the PCRA court's Order filed on December 21, 2020[,] addressed." Commonwealth's Brief at 8 n.3. It explains:

The Order "DENIED" [Appellant's] "Petition for Post-Conviction Collateral Relief." [PCOO at] 7. The accompanying Opinion states that[,] "Before the court is [Appellant's] Petition for DNA Testing, raised through the filing of a Petition for Post-Conviction Collateral Relief." *Id.* at … 1. The Opinion discusses/analyzes [Appellant's] petition for DNA testing. *Id.* at 1-6. The Commonwealth, therefore, interprets the Order filed December 21, 2020[,] as denying [Appellant's] petition for DNA testing. [Appellant] also filed a PCRA petition on December 28, 2018.

*Id.* We agree with the Commonwealth's interpretation of the court's order as denying Appellant's petition for DNA testing, as well as his PCRA petition. As Appellant makes no argument related to the claim(s) he raised in his PCRA petition and, instead, focuses solely on the court's denial of his petition for DNA testing, we do not address the propriety of the court's denial of his PCRA petition.

9543(a)(1)(iv), and prejudice has therefore not attached against the same; and,

B. In finding that Appellant failed to demonstrate a reasonable probability that DNA testing will lead to evidence which proves his actual innocence.

Appellant's Brief at 4.

Preliminarily, this Court has explained that,

[p]ost[-]conviction DNA testing falls under the aegis of the PCRA, and thus, our standard of review permits us to consider only whether the PCRA court's determination is supported by the evidence of record and whether it is free from legal error. Additionally, where the resolution of this appeal involves statutory construction, which involves a pure question of law, we review that aspect of the trial court's decision *de novo* and our scope of review is plenary. Moreover, the DNA testing statute, which was passed unanimously by the Pennsylvania General Assembly, should be regarded as a remedial statute and interpreted liberally in favor of the class of citizens who were intended to directly benefit therefrom, namely, those wrongly convicted of a crime.

The pertinent statutory language at issue is as follows:

**(a) Motion.—**

(1) An individual convicted of a criminal offense in a court of this Commonwealth and serving a term of imprisonment or awaiting execution because of a sentence of death may apply by making a written motion to the sentencing court for the performance of forensic DNA testing on specific evidence that is related to the investigation or prosecution that resulted in the judgment of conviction.

(2) The evidence may have been discovered either prior to or after the applicant's conviction. The evidence shall be available for testing as of the date of the motion. If the evidence was discovered prior to the applicant's conviction, the evidence shall not have been subject to the DNA testing requested because the technology for testing was not in existence at the time of the trial or the applicant's counsel did not seek testing at the time of the trial in a case where a verdict was rendered on or before January 1, 1995, or the applicant's counsel sought funds from the court to pay for

the testing because his client was indigent and the court refused the request despite the client's indigency.

…

**(c) Requirements.**—In any motion under subsection (a), under penalty of perjury, the applicant shall:

(1)(i) specify the evidence to be tested;

(ii) state that the applicant consents to provide samples of bodily fluid for use in the DNA testing; and acknowledge that the applicant understands that, if the motion is granted, any data obtained from any DNA samples or test results may be entered into law enforcement databases, may be used in the investigation of other crimes and may be used as evidence against the applicant in other cases.

(2)(i) assert the applicant's actual innocence of the offense for which the applicant was convicted;

…

**(d) Order.—**

(1) Except as provided in paragraph (2), the court shall order the testing requested in a motion under subsection (a) under reasonable conditions designed to preserve the integrity of the evidence and the testing process upon a determination, after review of the record of the applicant's trial, that the:

(i) requirements of subsection (c) have been met;

(ii) evidence to be tested has been subject to a chain of custody sufficient to establish that it has not been altered in any material respect; and

(iii) **motion is made in a timely manner** and for the purpose of demonstrating the applicant's actual innocence and not to delay the execution of sentence or administration of justice.

(2) The court shall not order the testing requested in a motion under subsection (a) if, after review of the record of the applicant's trial, the court determines that there is no reasonable possibility that the testing would produce exculpatory evidence that:

> (i) would establish the applicant's actual innocence of the offense for which the applicant was convicted;

42 Pa.C.S. § 9543.1 ("DNA Statute").

*In re Payne*, 129 A.3d 546, 553–55 (Pa. Super. 2015) (some brackets,

quotation marks, and internal citations omitted; emphasis added).

Here, the PCRA court first concluded that Appellant failed to prove the

above-emphasized timeliness requirement of the DNA statute. The court

reasoned:

> As to the issue of timeliness, initially the court notes that the PCRA's one-year time bar does NOT apply to Motions for Performance of forensic DNA testing under 42 Pa.C.S. § 9543.1. *Commonwealth v. Brooks*, 875 A.2d 1141 (Pa. Super. 2005). Timeliness is determined on a case-by-case basis by looking at all the circumstances. *Commonwealth v. Edmiston*, 65 A.3d 339 (Pa. 2013)[, *rev'd on other grounds by* *Commonwealth v. Small*, 238 A.3d 1267 (Pa. 2020)].
>
> In *Edmiston*, the request for DNA testing was judged untimely because (1) at trial, [the a]ppellant indicated he was satisfied with the DNA testing that was conducted and declined further testing; (2) [the a]ppellant did not seek testing after the passage of the DNA testing provision in September 2002; (3) [the a]ppellant did not seek DNA testing when he filed his second PCRA petition; (4) [the a]ppellant ha[d] known of the existence of the physical evidence he [sought] DNA testing on for over twenty (20) years; (5) [the a]ppellant was represented by counsel in the intervening time who vigorously pursued PCRA relief; and (6) the policy reason the statute limits post-trial testing [is] so that [there is an] … emphasis … on securing testing pre-trial[.] []*See Commonwealth v. Williams*, 899 A.2d 1060 (Pa. 2006) (DNA testing that is available … cannot be treated as a second chance lottery ticket).
>
> As in *Edmiston*, a substantial period of time has elapsed prior to the instant request. [Appellant] was arrested in 1989, and has been through numerous legal proceedings[,] including a trial and subsequent plea. The issue of DNA testing was not raised for 29 years.

> It is axiomatic that prejudice has attached. Since the absence of DNA would not conclusively establish innocence,[3] it is clearly an open question as to whether a court would set aside the plea.
>
> Even assuming the plea was set aside, a new trial would not commence for a considerable period of additional time. Location of witnesses, faded memory, missing exhibits and difficulties that are the nature of delay would almost surely be an insurmountable obstacle to justice. [Appellant] made a conscious decision 16 years ago to accept and enter a negotiated plea. At the time of the plea, 15 additional years had already elapsed, apparently with no thought of a DNA test.
>
> Therefore, considering all of the circumstances, the court finds the instant request for DNA testing untimely.

PCOO at 4-5 (emphasis in original).

Herein, Appellant attacks the PCRA court's rationale, initially arguing that *Edmiston* is distinguishable. Specifically, Appellant stresses that the *Edmiston* Court relied on Edmiston's "deliberate decision not to seek DNA testing throughout 'lengthy post-conviction proceedings' and the belated timing of his claim" in deeming his DNA testing request untimely. Appellant's Brief at 38. According to Appellant, the present facts are "[d]irectly opposite to the facts in *Edmiston*" because

> neither … Appellant, nor his then legal counsel, had any time whatsoever at the time of the 2004 [n]o [c]ontest plea in order to make a deliberate decision whether to request DNA testing. The choice was to either "plead now or not at all and go back to prison….["] Given that choice, … Appellant certainly did not have the time to request DNA testing in 2004, even if he **had** time to deliberately consider the same. Further, there can be no question that … Appellant is not attempting to somehow "delay justice" as he has already served a seventeen (17) year period of

---

[3] As set forth *infra*, we express no opinion on the propriety of the court's conclusion that DNA evidence could not conclusively establish Appellant's innocence.

incarceration and several years [of] parole, for a crime he has always maintained he did not commit….

*Id.* (emphasis in original).

Appellant's attempt to distinguish **Edmiston** is unavailing. Initially, the DNA testing statute was enacted on September 8, 2002. At that point, Appellant had counsel, and was in the process of litigating his first PCRA petition, which culminated in the entry of his no contest plea in 2004. Even if the plea negotiations required Appellant's plea to be entered the same day as PCRA relief was granted, it is obvious that Appellant and his counsel had ample time to make a 'deliberate decision' about whether to request DNA testing between September of 2002 and the entry of his plea in July of 2004. They chose not to do so.

Moreover, Appellant does not explain why he could not have sought DNA testing after he entered his plea. As the Commonwealth observes,

[Appellant] … did not file a post-sentence motion, an appeal, a petition for DNA testing, or a PCRA petition after he entered his no contest plea. He had multiple avenues for relief. He did not exercise any of them. More than 14 years *after* he entered his beneficial no contest plea and after he completed his sentence, [Appellant] sought DNA testing for the first time. [Appellant] first sought DNA testing almost 30 years after he was first charged with crimes related to Wolfe's murder.

Commonwealth's Brief at 13 (emphasis in original).

We recognize that in **Edmiston**, the defendant's motion for DNA testing "was forwarded only to delay further the execution of the sentence." **Edmiston**, 65 A.3d at 579. Here, Appellant claims that he has completed his sentence and, thus, there are no further proceedings to delay. **See**

- 10 -

Appellant's Brief at 39. Notwithstanding this distinction, the similarities between this case and **Edmiston** support the PCRA court's conclusion that Appellant's petition is untimely. Namely, both Edmiston and Appellant were apparently satisfied with the DNA testing (or lack thereof) at their trials conducted in 1989 and 1990, respectively. **Id.** Additionally, both Edmiston and Appellant litigated PCRA petitions after "the post[-]conviction DNA testing provision was enacted on September 8, 2002[,]" yet neither sought DNA testing during those proceedings. **Id.** Instead, Edmiston waited over 20 years, and Appellant waited 28 years, from the dates of their trials to first seek DNA testing of evidence known to them at the time they were tried. **Id.** Both men were represented by counsel, who presumably knew of the PCRA DNA testing provisions, the technology, and the evidence, and who were "vigorously pursuing post-conviction relief on" both men's behalf. **Id.** We conclude that these similarities between **Edmiston** and the present case support the PCRA court's finding of untimeliness, even if Appellant's motivation in seeking testing is not to delay his case.

Moreover, we reject Appellant's claim that his petition was timely because it was filed "within literal days of the effective date" of 42 Pa.C.S. § 9543(a)(1)(iv), which states that a person may be eligible for PCRA relief if he "has completed a sentence of imprisonment, probation or parole for the crime and is seeking relief based upon DNA evidence obtained under section 9543.1(d) (relating to postconviction DNA testing)." 42 Pa.C.S. § 9543(a)(1)(iv) (effective Dec. 24, 2018). Appellant seems to suggest he could

not petition for DNA testing until 2018 when section 9543(a)(1)(iv) was enacted. He is incorrect. Section 9543(a)(1)(i) provides that PCRA relief is available to individuals "currently serving a sentence of imprisonment, probation or parole for the crime[.]" 42 Pa.C.S. § 9543(a)(1)(i). Appellant was incarcerated at the time the DNA statute became effective in 2002, and until he entered his no contest plea in 2004; therefore, he was eligible for PCRA relief in the form of DNA testing under section 9543(a)(1)(i). After his no contest plea, Appellant was sentenced 10 to 20 years' incarceration, plus 10 years' probation. Thus, he was still eligible for PCRA relief of DNA testing for at least a decade after his plea, yet he chose not to seek testing until 2018, making his petition untimely.

We also reject Appellant's claim that his petition was timely filed "after the discovery of new evidence in his case by Chief [Timothy] Miller." Appellant's Brief at 39. Appellant explains the 'new evidence' allegedly discovered by Chief Miller, as follows:

> [I]n … 2018, then Sunbury, PA Chief of Police Timothy Miller, conducted a new investigation….
>
> ***
>
> In short, Chief Miller described a theory espoused by and through an investigation by a (now deceased) Pennsylvania Trooper, Corporal Richard Bramhall, who had left a lost diary of his secret findings[,] which diary was later discovered by Chief Miller, and upon which investigation Chief Miller followed up and added his thoughts and findings. Said theory involved the disappearance of a woman named Barbara Miller, who said investigators now believed was kidnapped and murdered due to knowledge of her then[-]boyfriend's involvement in the killing of Ricky Wolfe, the victim in the instant case against Appellant.

- 12 -

> Further, Corporal Bramhall testified at Appellant's April 2, 2002 hearing that he had evidence which led him to believe that the actual murderer was a man named Roy Herrold (also now deceased). However, at said hearing, Corporal Bramhall did not give away his actual theory of why, how, or with whom Mr. Herrold would have committed said murder.

*Id.* at 23-24. Appellant "asserts that if the DNA of Roy Herrold," and others "suspected as co-conspirators in the disappearance of Barbara Wolfe, was found on beer cans or otherwise at the scene it would necessarily exonerate Appellant." *Id.* at 27. Accordingly, he contends that his petition seeking DNA testing was timely-filed after he discovered Chief Miller's investigation that revealed the theory that Roy Herrold was the killer.

Appellant's argument is meritless. As he concedes, Corporal Bramhall testified at the PCRA hearing in 2002 that he believed Roy Herrold was the actual murderer. Therefore, Appellant was aware of the theory that Herrold was the killer in 2002, yet he does not explain why he did not seek testing when the DNA statute became effective in September of 2002 to determine if Herrold's DNA was on items recovered from the scene of the murder. The fact that in 2018, Chief Miller allegedly accepted Corporal Bramhall's theory of the murder does not demonstrate that Appellant's DNA-testing request is timely.

Finally, we reject Appellant's argument that his petition for DNA testing was timely because "the substantially newer and better technology available now, in 2021, can no doubt provide more accurate and substantially probative results than could ever have been gained in [1990 or] 2004." *Id.* at 42. As the Commonwealth points out,

> [Appellant's] belief that a more current DNA test could provide more reliable DNA evidence does not obviate the requirement to timely seek DNA testing. [Appellant] conflates [s]ection 9543.1(a)(2) with the timeliness requirement of [s]ection 9543.1(a)(4). Section 9543.1(a)(2) allows for a request for new DNA testing where, in relevant part, "the evidence was subject to the testing, but newer technology could provide substantially more accurate and substantially probative results…." 42 Pa.C.S.[] § 9543.1(a)(2). The DNA testing statute "does not make advances in technology an excuse for failing timely to request DNA testing. The statute recognized that the testing available at the time of its enactment was of sufficient reliability that defendants could seek DNA testing, in cases where good faith claims of innocence were timely raised." *Edmiston*, 65 A.3d at 358. *Edmiston*, which concerned a similar timeline as the instant case, stated: "[Edmiston's] guilty status has not changed since his 1989 conviction; advances in technology allegedly occurring after that date do not explain why he, if truly innocent, did not seek immediate testing, or, at the very least, testing available as technology improved during the intervening years, rather than languishing on death row, all the while being supposedly innocent." *Id.*

Commonwealth's Brief at 15-17. As in *Edmiston*, Appellant could have – and should have – sought DNA testing earlier than 28 years after his conviction.

In sum, we discern no error in the PCRA court's conclusion that Appellant's request for DNA testing is untimely. As such, Appellant has not met the statutory requirements for the court to order DNA testing, and we need not examine the court's additional determination that there is no reasonable possibility that DNA testing would produce exculpatory evidence that would establish Appellant's actual innocence.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/25/2021